UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE M. POTTS,

        Plaintiff,

                                      Civil No. 07-701-HA

        v.

                                        OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

HAGGERTY, Chief Judge:

      Plaintiff George Potts requests judicial review of a final decision by the Commissioner of

the Social Security Administration (SSA) dated September 19, 2003, which concluded that he

was no longer disabled and no longer entitled to disability insurance benefits (DIB).  He seeks an

order reversing the Commissioner's decision and remanding this case for an award of benefits.

1  - OPINION AND ORDER

Previously, plaintiff had received DIB since September 14, 1992, after the Commissioner had determined that he suffered severe impairments related to his back, neck, lungs, headaches, and pain. Plaintiff's benefits were continued following a disability review in March 2000, but were denied as of September 1, 2003, after a subsequent review. This decision was upheld upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). The hearing was conducted on March 14, 2006, and testimony was heard from plaintiff and a vocational expert (VE). After the hearing the ALJ concluded that plaintiff was not disabled. Tr. 12-20.[1]

After a denial of plaintiff's administrative appeals, plaintiff filed suit in this court pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff appears to concur with the Commissioner's assertion that the relevant period to be reviewed by this court "is from March 2000 (last favorable decision) to September 2003 (end of disability)." Dft.'s Brief at 1 (citations omitted). After reviewing the record of this case and evaluating counsel's arguments, this court concludes that the Commissioner's decision must be affirmed.

## BACKGROUND

Plaintiff was born in 1957. Tr. 120. Plaintiff last worked in either 1992 or 1995 as a heavy equipment operation engineer. Tr. 128, 327. This work ended when plaintiff injured his back and neck. Tr. 327-33.

---

1    Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

In 1995 plaintiff was found disabled due to severe pain and headaches relating back to 1992. Specifically, in 1995 the ALJ determined that plaintiff's capacity to do sedentary work had been reduced by dizziness, syncope or near syncope, and pain. Tr. 41-42.

Plaintiff's disability benefits were continued in 2000 following a continuing disability review. Tr. 58, 89. Although the record reflected some medical improvement, plaintiff's condition had not improved enough to terminate his benefits. Tr. 58, 89.

Plaintiff underwent another review in 2003. Doctor Charles D. Bury examined plaintiff in August 2003, and noted that plaintiff had a muscular build and normal range of motion and strength. Tr. 190-91. The doctor's diagnoses included tobacco abuse, alcohol abuse, and mild weakness in the right leg. Tr. 191. He also wrote that plaintiff "was noted to walk from the office without using a cane. I felt he demonstrated exaggerated pain behavior while in the office and shows excellent physical strength and muscle development on examination." Tr. 191.

Another doctor, Richard Alley, M.D., reviewed plaintiff's records in September 2003 and concluded that plaintiff could do light work, but that his right lower extremity was limited, and that plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally stoop or crouch. Tr. 194-200.

In October 2003, after the Commissioner's initial determination that plaintiff was no longer entitled to DIB, plaintiff underwent an examination by James R. Phillips, Ph.D. Tr. 204-08. He diagnosed plaintiff with dysthymic disorder, panic disorder, pain disorder, and alcohol dependence. Tr. 208. He noted that plaintiff's alcohol abuse was chronic and likely exacerbated plaintiff's symptoms of depression and anxiety. *Id*.

From October 2003 through December 2005 plaintiff was examined occasionally by Richard J. Weiland, Jr., M.D.  Tr. 236-58, 276-78, 301-02.  Doctor Weiland prescribed medication for hypertension, breathing difficulties, and anxiety.  Tr. 239-44.  Subsequently, plaintiff visited Wendell C. Heidinger, M.D.  Tr. 303-15.

Plaintiff was also examined by James M. Read, Ph.D., in January 2004.  Tr. 209-17. Doctor Read diagnosed dysthymic disorder, panic disorder, pain disorder, alcohol dependence in early full remission, and history of opioid abuse in sustained full remission.  Tr. 215.  He concluded that plaintiff's ability to perform work-related mental activities appeared to be somewhat limited.  Tr. 216.  He noted that plaintiff was limited in his ability to remember, had difficulty concentrating and staying focused, but had improved in his ability to interact socially. *Id*.

The above summary of plaintiff's medical history pertains primarily to the period under review by this court.  Other details regarding plaintiff's health will be addressed below as necessary to this court's ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled only if his or her impairments are of such severity that the impairments preclude the claimant from undertaking previous work and the claimant is deemed unable to engage in any other SGA existing in the national economy after taking into account the claimant's age, education, and

work experience.  42 U.S.C. § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations omitted).

The Commissioner has established an eight-step sequential evaluation process that constitutes a continuing disability review for purposes of determining whether a person continues to be eligible for previously awarded disability benefits.

First, the Commissioner determines whether the claimant is engaging in SGA.  *See* 20 C.F.R. § 404.1594(f)(1).  If so, the claimant is no longer disabled.  If not, the Commissioner proceeds to step two.

Under step two, the Commissioner determines whether the claimant's impairments meet or equal the requirements of a listed impairment in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R. § 404.1594(f)(2).  If any impairment meets or equals a listed impairment, the claimant remains disabled.  If not, the Commissioner proceeds to step three.

Under step three, the Commissioner determines whether there has been medical improvement.[2]  If no medical improvement is evident (and if no exceptions apply at step five), the claimant remains disabled.  If there is medical improvement, the Commissioner proceeds to step four.

At step four the Commissioner determines whether the medical improvement is related to the claimant's ability to work.  Medical improvement is "related to the ability to work" if there

---

2       Medical improvement is defined as any decrease in the severity of impairments that were present at the time the individual was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(1).  Such a determination must be supported by changes that demonstrate improvement in relation to symptoms, signs, or laboratory findings associated with the impairment.  *Id*.

has been a decrease in the severity of the impairment present at the time of the most recent medical decision and an increase in the individual's functional capacity to perform basic work activities. 20 C.F.R.§ 404.1594(b)(1); 404.1594(f)(3) & (4). If the medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. If the improvement is related, the Commissioner proceeds to step six.

If there has been no medical improvement shown or the improvement is unrelated to work ability, then the Commissioner must decide whether an exception to the medical improvement standard applies. If not, then a finding of continuing disability is warranted. *See* 20 C.F.R. § 404.1594(f)(5).

When evident medical improvement is found to be related to work ability or when an exception to the medical improvement standard applies, then the Commissioner considers whether the claimant's current impairments in combination are severe. If the claimant's impairments are not severe, then the claimant is no longer considered disabled. If the impairments are severe, then the commissioner proceeds to step seven. *See* 20 C.F.R. § 404.1594(f)(6).

At step seven, the Commissioner assesses the claimant's ability to engage in SGA in accordance with 20 C.F.R. § 404.1561. If the claimant is found capable of performing past relevant work, then the disability will be found to have ended. If not, the Commissioner proceeds to step eight. *See* 20 C.F.R. § 404.1594(f)(7).

At step eight, after the claimant has been determined to be unable to perform past relevant work, the Commissioner assesses the claimant's residual functional capacity (RFC) and determines whether the claimant can perform other work. If so, then the claimant is no longer

6  - OPINION AND ORDER

entitled to DIB. If the claimant cannot perform other work, a finding of continuing disability is warranted. *See* 20 C.F.R. §§ 404.1594(f)(8), 404.1560(c). As in the five-step analysis used when determining initial disability, the burden rests with the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *See, e.g., Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (citations omitted).

The Commissioner's decisions must be affirmed if they are based on proper legal standards and the accompanying findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097-98 (citations omitted). Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).

This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, is responsible for resolving conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

7  - OPINION AND ORDER

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the Commissioner's analysis, the ALJ found that plaintiff had not engaged in SGA.  Tr. 14.

At step two, the ALJ concluded that plaintiff's impairments, either singularly or in combination, did not meet or equal the requirements of a listed impairment in 20 C.F.R., Part 404, pt 404, subpt. P, app. 1.  Tr. 15-16.

At step three the ALJ concluded that plaintiff experienced medical improvement because his episodes of syncope and headaches had lessened.  Tr. 16.

At step four, the ALJ concluded that plaintiff's medical improvement was related to his ability to work.  Tr. 17.

At step five, the ALJ determined that exceptions to medical improvement were inapplicable.

At step six the ALJ concluded that plaintiff's degenerative disc disease, asthma, obesity, history of peripheral edema, depression, dysthymic disorder, bipolar disorder, panic disorder, anxiety disorder, pain disorder, and alcohol dependence in remission were, in combination, severe impairments.  Tr. 14-15, 17.

At step seven the ALJ determined that plaintiff could not perform past work, but had the RFC to perform a modified range of light work.  Tr. 14, 17.  Plaintiff could occasionally use his lower right extremity for foot controls, climb stairs, stoop, or crouch.  *Id*.  Plaintiff could not climb ladders or scaffolds or work with his arms elevated in front of him without support for more than brief periods of time.  *Id*.  Plaintiff needed to change positions  between sitting and

standing and had difficulty maintaining consistent attention and concentration on detailed and complex material. *Id*.

At step eight, after considering the testimony of a VE, the ALJ concluded that plaintiff could perform other work that exists in significant numbers in the national economy, including work as a ticketer, counter clerk, or a gatekeeper. Tr. 19-20.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits. Each of plaintiff's assertions has been considered and rejected. This court will address plaintiff's four primary arguments: plaintiff alleges that the ALJ (1) erred in finding that plaintiff experienced medical improvement; (2) erred in determining plaintiff's RFC; (3) relied on erroneous vocational testimony; and (4) erred in rejecting plaintiff's testimony. These arguments are discussed below.

## DISCUSSION

### 1.    Medical Improvement

Plaintiff asserts that the ALJ erred because the denial of benefits was grounded upon evidence of improvement in syncope, an impairment suffered by plaintiff that was not among the severe impairments considered in the determination of initial eligibility of DIB. This argument is rejected.

Plaintiff suffered from experiences of syncope or near-syncope and severe headaches when he initially qualified for DIB in 1995. Tr. 40-42. These impairments required him to take narcotic pain medication. *Id*. Plaintiff was unable to drive and his daily activities were limited

to sleeping and watching television.  Tr. 41.  He required the assistance of a cane or wheelchair to walk.  *Id.*

The evidence supports a conclusion that plaintiff enjoyed subsequent medical improvement.  In 2000, when his disability benefits were continued, plaintiff was noted to be capable of personal grooming, shopping, cooking, laundry, and cleaning.  Tr. 51-52, 61, 136-48, 152-53.  He drove, no longer took narcotic pain medication, and used a cane less frequently.  Tr. 49-51, 61, 135, 142, 151, 185-86.  However, plaintiff remained limited in his range of motion and his strength.  Tr. 61, 89, 188-89.

When plaintiff was found no longer disabled in 2003, his range of motion and strength were found to be normal.  Tr. 190-91.  Plaintiff no longer complained of dizziness, syncope or near-syncope, or headaches.  Tr. 160, 190-91, 236-39. He walked without a cane. Tr. 191.  He performed almost all daily living activities and drove.  Tr. 164, 171.  His examination revealed excellent physical strength and muscle development.  Tr.  191.

The ALJ determined that plaintiff no longer experienced episodes of dizziness and syncope or near-syncope and noted that plaintiff's headaches and back pain had decreased in severity.  Tr. 16.  Concurrently, there was evidence that plaintiff's daily living activities had increased.  *Id.*

Plaintiff's attempt to construe the ALJ's findings regarding medical improvement as limited merely to syncope, and his related argument that plaintiff's severe impairments found in 1995 had not improved, is unpersuasive.  The ALJ correctly concluded that an analysis of the relevant medical record established that plaintiff's impairments had decreased in severity since 2000, and that this decrease was significant when compared to his initial disability determination

in 1995.  The ALJ's findings of medical improvement were proper.  This improvement, when considered with plaintiff's enhanced RFC and ability to perform other work, constitutes substantial evidence in the record as a whole that supports the Commissioner's decision that plaintiff was no longer disabled under the Act as of September 2003.

### 2.    Plaintiff's RFC was determined properly

Next, plaintiff contends that the ALJ failed to consider plaintiff's pain testimony and memory and concentration difficulties when determining his RFC.  As noted above, when the ALJ has reached step eight in determining whether a disabled claimant is entitled to continuing benefits, the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities."  Social Security Ruling (SSR) 96-8p.  A claimant's RFC is what the claimant "can still do despite his or her limitations."  *Id*.  It is a determination of the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  However, for DIB eligibility, a claimant's inability to work must result from his or her physical or mental impairments.  *Id*.  The ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."  *Id*.  The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment.

Information about symptoms must be given "careful consideration."  *Id*.  To determine RFC, an ALJ may rely on testimony from a qualified VE.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  A proper RFC determination requires the ALJ to take into account "those limitations for which there was record support that did not depend on [the claimant's] subjective complaints."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

11 - OPINION AND ORDER

Here, the ALJ considered plaintiff's testimony, and functional assessments from Dr. Bury (plaintiff's treating physician), and from agency reviewing physicians. Tr. 16-18,. After properly rejecting some of plaintiff's symptom testimony, the ALJ was not required to incorporate all of the testimony regarding subjective pain complaints into his findings. *Bayliss*, 427 F.3d at 1217. As noted above, the ALJ determined that plaintiff could perform a modified range of light work. Tr. 14, 17.

Plaintiff complains that the ALJ improperly rejected the medical evidence presented by Dr. Read regarding his finding that plaintiff had poor short-term memory and, as a result, the RFC is flawed. This court disagrees.

It is true that Dr. Read wrote in his evaluation that plaintiff's "ability to perform work-related mental activities appears somewhat limited." Tr. 216. The ALJ acknowledged Dr. Read's findings that plaintiff could understand instructions without difficulty, and that plaintiff's ability to interact socially had improved. Tr. 15. The ALJ also acknowledged that Dr. Read observed that plaintiff had trouble remembering instructions, difficulty maintaining focus and concentration, and had poor adaptability. *Id*.

Plaintiff contends that Dr. Read's specific findings regarding short-term memory limitations were inadequately addressed by the ALJ's analysis, which was more explicit regarding plaintiff's limitations in concentration and attention. However, the ALJ's explicit findings that plaintiff had difficulty maintaining concentration on detailed and complex material are sufficiently comprehensive to be viewed as consistent with Dr. Read's opinion that plaintiff's abilities in these areas were somewhat limited.

This court concludes that the ALJ's findings and analysis were reasonable, supported by evidence in the record, and sufficiently inclusive of the scope of limitations addressed by Dr. Read.  Even if plaintiff presents a second alternative rational interpretation of the evidence, this court is compelled to uphold the ALJ's rational conclusions.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

      **3.**      **The ALJ did not rely upon 'erroneous vocational testimony'**

Plaintiff also argues that the ALJ erred by relying upon testimony from the VE.  As noted above, this court has reviewed the ALJ's analysis of the relevant medical evidence and of plaintiff's RFC and concludes that the RFC analysis is supported by substantial evidence.  Similarly, the hypothetical questioning presented to the VE, and the ALJ's subsequent interpretation of the testimony elicited from the VE, was proper.  *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

After determining that plaintiff could not perform his past relevant work, the ALJ properly addressed whether other work existed in significant numbers in the national economy that plaintiff could perform.  The ALJ took testimony from a VE for this purpose.  This was proper.  *See Tackett*, 180 F.3d at 1099.  The RFC finding and the hypothetical questioning posed to the VE appropriately included only limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations."  *Osenbrock*, 240 F.3d at 1165 (citation omitted).  The hypothetical question posed by the ALJ to the VE contained the following limitations: lift and carry ten pounds frequently and twenty pounds occasionally; occasional use of the right lower extremity for foot controls; no climbing ladders or scaffolds; occasional stair climbing, stooping, and crouching; opportunity to change positions; difficulty

maintaining consistent attention on detailed or complex material; and unable to work with arms elevated, unsupported, out in front for more than brief periods of time.  Tr. 359.

The VE provided a sample of the jobs someone with these limitations could perform.  Tr. 360.  In so doing she relied upon the Dictionary of Occupational Titles (DOT), which is a publication of the United States Department of Labor containing descriptions of the requirements for thousands of jobs that exist in the national economy.  Definitions provided by the DOT are generic and offer "the approximate maximum requirements for each position, rather than their range." *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995).

The DOT specifies the general educational requirements (GED) including the level of reasoning skills required for each job.  The GED is a measure of an individual's educational achievement in reasoning, math, and language, and considers aspects of education, either obtained by formal schooling or that which is obtained from experience and self-study.  WL DICOT Appendix C.

The VE testified that a person with plaintiff's limitations could perform the jobs of a ticketer (DOT 229.587-018), the duties of which the VE described as adhering labels to items; a counter clerk (DOT 249.366-010); and a gatekeeper (DOT 372.667-030).  Tr. 360.

The Commissioner now concedes that the semi-skilled job of gatekeeper cannot be performed by plaintiff.  Dft.'s Brief at 16.  Plaintiff contends that the VE's testimony that someone with plaintiff's limitations could perform the jobs of ticketer and counter clerk should be rejected as well.  Plaintiff's arguments are unpersuasive.

First, plaintiff contends that because those two jobs require GED levels of at least 2 or 3, they should be construed as beyond plaintiff's RFC.

14 - OPINION AND ORDER

A GED Reasoning Level of 2 requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and also dealing with problems "involving a few concrete variables in or from standardized situations."  DOT, Appendix C. Although the DOT definition states that level two jobs require the ability to carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved and not require a high level of reasoning."  *Flaherty v. Halter*, 182 F. Supp.2d  824, 850 (D. Minn. 2001).  Level 3 requires one to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or from standardized situations."  DOT, Appendix C.

These levels are consistent with the hypothetical limitations posed: a person who has difficulty maintaining consistent attention on detailed or complex material.  Jobs with a GED of 2 or 3 fall reasonably within the parameters established by the ALJ's conclusions regarding plaintiff's RFC and limitations.

Plaintiff also challenges whether the reaching requirements in the two jobs are consistent with the hypothetical limitations presented: unable to work with arms elevated, unsupported, out in front for more than brief periods of time.  The VE testified that the jobs provided sufficient freedom of movement to avoid the limitations presented in the hypothetical question.  Tr. 364; *see also* DOT 229.587-018.  The VE's testimony is fairly construed as consistent with the DOT. The ALJ's duty to elicit a reasonable explanation for any unresolved conflict between the VE evidence and the DOT was, therefore, not triggered here.  This court concludes that the VE's testimony did not contradict the limitations presented by the ALJ, and that the DOT definitions,

15 - OPINION AND ORDER

properly considered, fail to invalidate such testimony.  Plaintiff's objections in this regard are overruled.

The hypothetical questioning submitted to the VE was consistent with, and supported by, the objective medical evidence presented.  Because the ALJ's hypothetical questioning was based upon substantial evidence in the record, this court concludes that the ALJ's reliance upon the VE's testimony in finding that plaintiff could perform other work was proper.  *See Osenbrock*, 240 F.3d at 1164-65 (citations omitted).

**4.     The ALJ rejected plaintiff's testimony properly**

Plaintiff first argues that the ALJ erred by giving inadequate reasons for rejecting plaintiff's symptom testimony.  Pl.'s Brief at 17-19.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.  *Burch*, 400 F.3d 676, 680 (9th Cir. 2005) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  Medical evidence is a "relevant factor" in determining the severity of a claimant's pain and its effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in a credibility analysis.  *Id*.; *see also Burch*, 400 F.3d at 681.

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment (other than medication); measures used to relieve symptoms; and

functional limitations caused by the symptoms.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529(c)(3).

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints.  *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Under this analysis, a claimant who alleges disability based on subjective symptoms must meet two tests.  The first prong of the test requires that the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also  Cotton v. Bowen*, 799 F.2d 1407 (9th Cir. 1986); *Smolen*, 80 F.3d at 1281-82.

Second, the claimant must show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Smolen*, 80 F.3d at 1282.  Notably, this evidence need not establish that the impairments caused the symptom or the severity of it as alleged by the claimant.

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.  Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of

> the symptom she has alleged; she need only show that it could
> reasonably have caused some degree of the symptom.  This
> approach reflects the highly subjective and idiosyncratic nature of
> pain and other such symptoms. . . .  Thus, the ALJ may not reject
> subjective symptom testimony under the *Cotton* analysis simply
> because there is no showing that the impairment can reasonably
> produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (citing *Bunnell*, 947 F.2d at 347-48).

"The ALJ must state specifically which symptom testimony is not credible and what facts

in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.  In determining that subjective

testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's
> reputation for lying, prior inconsistent statements concerning the
> symptoms, and other testimony by the claimant that appears less than
> candid; (2) unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment; and (3) the
> claimant's daily activities.

*Id*.  (citations omitted).

When the plaintiff has met the burden of showing that his or her impairment or

combination of impairments *could reasonably be expected to* (not that it did in fact) produce

some degree of the symptoms that plaintiff's testimony describes, and there is no evidence

suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the

severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so.  *Id*. at

1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation omitted).

Moreover, the ALJ is required to specify what testimony is not credible and identify the

evidence that undermines the claimant's complaints – general findings are insufficient.  *Burch*,

400 F.3d at 680 (citations and quotation marks omitted).  The ALJ is not permitted to disbelieve

a plaintiff simply because no objective medical evidence supports the plaintiff's testimony

18 - OPINION AND ORDER

regarding the severity of subjective symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (citations and quotations omitted).  Rather, to find a plaintiff not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), or upon conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony.  *Id*. (citation and quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight that the adjudicator gave to the individual's statements and the reasons for that weight.  *Id*. (citing SSR 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is supported by specific findings and reasoning."  *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

An ALJ may also evaluate credibility by considering inconsistencies between a claimant's testimony and evidence of the claimant's activities of daily living.  *See Thomas*, 278 F.3d at 958-59.

Plaintiff testified that he rode a 1200cc Harley Davidson motorcycle because his doctor had encouraged him to do so as a means of staying active.  Tr. 347-48.  He acknowledged that he could run errands, pay bills, do household chores including dish washing, attend to personal hygiene, grocery shop, and carry bags of  groceries.  Tr. 51-52, 61, 136-48, 152-53, 341-45.

19 - OPINION AND ORDER

The ALJ also noted that plaintiff sustained a relationship and had regular social interactions, which was at least somewhat inconsistent with his claims of social isolation and panic attacks.  Tr. 18.

Moreover, lack of treatment for mental conditions is a legitimate credibility consideration.  *Burch*, 400 F.3d at 681.  The ALJ pointed out that plaintiff failed to seek psychotherapy for his mental impairments.  Similarly, the ALJ correctly noted that the lack of medical treatment for plaintiff's back impairment was a relevant factor to his credibility determination.  Tr. 18.

A claimant's treatment regimen is viewed as "powerful evidence regarding the extent to which [he or she] was in pain."  *Burch*, 400 F.3d at 681.  Opting for over-the-counter pain medication is construed as "conservative treatment" that may "discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (internal quotations and citations omitted).

The evidence of plaintiff's medical improvements, reviewed in detail above, is additional reasonable support for the ALJ's evaluation of plaintiff's testimony.  Moreover, the ALJ also noted evidence in the record of possible exaggerated pain behavior.  Tr. 18.[3]  Such evidence is a factor to consider when determining credibility.  *Tonapetyan*, 242 F.3d at 1148.

After reviewing the record and the parties' arguments, this court concludes that the ALJ's determination that plaintiff's testimony was not entirely credible was supported by persuasive evidence concerning plaintiff's medical improvement, his participation in activities inconsistent

---

[3]    As noted above, Dr. Bury believed that plaintiff "demonstrated exaggerated pain behavior while in the office."  Tr. 191.

with his stated level of limitations, observations by a medical professional of exaggerated pain behavior, and plaintiff's conservative treatment choices.  This evidence amounts to clear and convincing reasons to view plaintiff's testimony as not entirely credible, and plaintiff's objections to the ALJ's findings in this regard must be rejected.

## **CONCLUSION**

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record.  The final decision of the Commissioner terminating the DIB for plaintiff George M. Potts is AFFIRMED.

IT IS SO ORDERED.

DATED this ___25___ day of September, 2008.


  /s/ ANCER L. HAGGERTY____
ANCER L. HAGGERTY
United States District Judge